UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Aaron E. Young, *pro se*,

        Plaintiff,

v.

Management & Training Corp., et al.,

        Defendants.

Case No. 3:17-cv-2426

MEMORANDUM OPINION
AND ORDER

## I.    INTRODUCTION

Defendants Management & Training Corporation ("MTC"), MTC Medical LLC, Neil Turner, Becky Joyce, Ruben Quintero, Vicky Donahue, Lori Shuler, James Craig, Benjamin Blankenship, and Kea Smith have filed a motion for summary judgment as to the claims asserted against them by *pro se* Plaintiff Aaron E. Young. (Doc. No. 23). Young filed a brief in opposition to Defendants' motion, as well as a supplemental brief in opposition. (Doc. No. 29; Doc. No. 31). Defendants filed a brief in reply. (Doc. No. 33).

Young also filed three motions to strike some or all of the affidavits of Shuler and Donahue. (Doc. No. 28; Doc. No. 34; Doc. No. 41). Defendants oppose each of those motions and filed a motion to strike of their own. (Doc. No. 44). Finally, Young also filed a motion for leave to file a declaration in support of his opposition to Defendants' summary judgment motion. (Doc. No. 38).

For the reasons stated below, I grant Defendants' motion for summary judgment, deny Young's motions to strike and his motion for leave, and deny Defendants' motion to strike.

## II.   BACKGROUND

On October 24, 2016, staff at the North Central Correctional Complex in Marion, Ohio, conducted an annual screening for tuberculosis. Medical and security staff members gathered inmates in the dayrooms of the housing units at the facility, where staff members had set up folding tables. In Young's unit, inmates were ordered to stand in a line approximately ten feet away from the three screening tables. (Doc. No. 30 at 1-2). The parties disagree on the distance between these tables. Young asserts the tables were only four feet apart, (*id.* at 2), while Defendants contend the tables were set up on different sides of the room. (Doc. No. 23-1 at 2).

According to Young, the inmates waiting in line could overhear the conversations between the medical staff members and the inmates at the tables. Young contends Defendants conducted the tuberculosis testing in a way which led to his sensitive medical information – his prior tuberculosis diagnosis – being disclosed to other inmates. (Doc. No. 30 at 2). Defendants dispute Young's characterization of the testing, asserting the tables were placed far enough away from each other and from the line of inmates so that the conversations could not be overheard "if held at normal volumes." (Doc. No. 23-1 at 3).

Before taking his turn at the screening table, Young complained about the table set-up in the room to Blankenship, indicating he could overhear the conversations of other inmates and that he did not want to speak to the nurses at the tables because he did not want other inmates to overhear his disclosure of his medical information. (Doc. No. 30 at 2). Young asserts Blankenship told him he would be placed in segregation if he did not participate in the screening. (*Id.*).

Young claims Defendants violated his Fourteenth Amendment rights by disclosing his medical information and held a meeting in September 2016 for the purpose of ordering that tuberculosis testing be done in a manner in which it was foreseeable that Young' sensitive medical information would be disclosed to other inmates. (Doc. No. 1 at 3-4). He claims Turner, Shuler,

Quintero, Craig, and Donahue ordered Blankenship, Smith, and six unknown defendants to violate Young's Fourteenth Amendment rights. (*Id.* at 5). He also alleges MTC and MTC Medical LLC had an unconstitutional custom and policy of requiring inmates to disclose sensitive medical information within earshot of other inmates, had an unconstitutional custom and policy of inadequately training and supervising employees concerning the disclosure of medical information, and acted negligently in training employees and in the manner in which Defendants conducted the tuberculosis screening. (*Id.*).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

#### A. PROCEDURAL MOTIONS

Young filed three motions to strike some or all of two affidavits Defendants submitted in support of their summary judgment motion. (Doc. No. 28; Doc. No. 34; Doc. No. 41). Defendants filed a motion to strike two declarations Young filed after the summary judgment briefing was completed. (Doc. No. 44). Motions to strike typically are aimed at material contained in pleadings. *See Fox v. Michigan State Police Dep't*, 173 Fed. Appx. 372, 375 (6th Cir. 2006). This type

3

of motion is designed to "'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted).

Young seeks to strike affidavits from Shuler and Donahue because, he claims, the affidavits contain statements of fact which Shuler and Donahue do not have personal knowledge of, (Doc. No. 28; Doc. No. 34), and because the affidavits do not say they "are sworn to the 'truthfulness' to the matter or their statement therein." (Doc. No. 41 at 1).

Young's motions to strike paragraphs 12-15 from Donahue's affidavit lacks merit. (Doc. No. 28; Doc. No. 34). He offers no more than his bald assertion that Donahue was not present during any part of the tuberculosis testing in his housing unit and thus does not have personal knowledge of the manner in which the facility conducted the tuberculosis testing. (Doc. No. 28 at 1). Donahue's statement that she has personal knowledge of the facts stated in her affidavit is sufficient to provide a basis for admitting those statements. Young offers no basis for his argument that her statements must be stricken simply because Donahue did not explicitly state that she was physically present in his housing unit on October 24, 2016.

Young's motion to strike paragraph 18 of Shuler's affidavit also lacks merit, as that paragraph sets forth one of the reasons Shuler gives for denying Young's grievance; Defendant do not seek to use it to establish the truth of the underlying facts. Further, as Defendants note, the affidavits comply with the requirements of Rule 56. I deny Young's motions to strike.

I also deny Defendants' motion to strike. Defendants claim Young's unsworn declaration (Doc. No. 38), does not comply with federal law and that other declarations Young filed were untimely. (Doc. No. 44 at 2-3). As I discuss below, I conclude Young has not established a genuine dispute of material fact as to any of his claims and therefore I deny Defendants' motion to strike as moot.

4

Young also filed a motion for leave to file another declaration. (Doc. No. 38). Young claims he sought to file the declaration over two months after he filed his briefs in opposition to Defendants' summary judgment motion because he only recently discovered the declarant's name. (*Id.* at 1). I conclude the declaration, if admitted, would not create a genuine dispute of material fact as to any of the issues in this case. *See* Fed. R. Civ. P. 56; *Stevenson v. Brennan*, No. 06-15182, 2018 WL 1250477, at *2 (E.D. Mich. Mar. 12, 2018). Therefore, I deny Young's motion for leave.

### B. SUMMARY JUDGMENT

Young does not dispute Defendants' contention that they "have a legitimate penological interest in protecting inmates and staff from infectious diseases and that mandatory [tuberculosis] testing is a reasonable method of accomplishing such goals . . . ." (Doc. No. 23 at 9 (quoting *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464, 467 (S.D. Ohio 1998))). Young contends, however, that the manner in which Defendants conducted the testing violated his Fourteenth Amendment right to medical privacy. (Doc. No. 1 at 4).

The Sixth Circuit has held the Fourteenth Amendment protects "an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm (*Kallstrom* [*v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)], and (2) where the information released was of a sexual, personal, and humiliating nature (*Bloch* [*v. Ribar*, 156 F.3d 673 (6th Cir. 1998)])." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). In an unpublished opinion, the Sixth Circuit announced the broad holding that "inmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information [to] other inmates subject to legitimate penological interests." *Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010).

Though *Moore* dealt specifically with the allegedly-intentional disclosure of Moore's HIV-positive status by corrections officers to other inmates, *id.* at 425, it relied in part on *Powell v. Schriver*,

5

175 F.3d 107 (2d Cir. 1999), in which the Second Circuit held "the gratuitous disclosure of an inmate's confidential medical information as humor or gossip—the apparent circumstance of the disclosure in this case—is *not* reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy." *Id.* at 112 (emphasis in original).

The *Powell* case provides a useful paradigm for understanding the apparent dissonance between *Moore* and later cases like *Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011), in which the Sixth Circuit held a local government could compel an employee to disclose personal medical information so long as the disclosed information "does not implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id.* at 261. Like *Moore*, *Powell* involved circumstances in which the apparent primary motivation behind the disclosure did not involve the safety and security of the staff and inmates in the institution.

Unlike *Moore* and *Powell*, the disclosure of Young's medical information arose while Defendants sought to protect inmates and staff from an infectious disease. *See, e.g., Mason v. Bolton*, No. 3:12-CV-P642-H, 2013 WL 1668248, at *2 (W.D. Ky. Apr. 17, 2013) (citing *Mack v. Campbell*, No. 91–5181, 1991 WL 243569, at *1 (6th Cir. Nov. 21, 1991) ("finding that 'the tuberculosis screening program is reasonably related to the legitimate penological interest of preventing the spread of disease' and that inmate's refusal to take TB test justified administrative segregation and disciplinary conviction.")).

Young offers no evidence to disprove Defendants' assertion that the tuberculosis testing was held in the common area rather than in private offices in order to maintain security for staff members. (Doc. No. 23 at 4-5, 10). Even if I assume the disclosure of Young's medical information implicates "either fundamental rights or rights 'implicit in the concept of ordered liberty,'" *Bloch*, 156 F.3d at 685 (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)), Young

6

fails to show his interest in protecting the privacy of his medical information outweighs Defendants' interest in its legitimate penological objectives.

Young's assertion that Blankenship threatened to place Young in segregation if he did not participate does not change this result. The institution's legitimate penological objective in preventing the spread of infectious diseases like tuberculosis permits the institution to require inmates to submit to tuberculosis testing and to punish an inmate's failure to comply with that requirement, including through placement in segregation. *See, e.g., Mack*, 1991 WL 243569, at *1; *Thomas v. Smith*, No. 2:08-cv-938, 2010 WL 728209, at *2 (S.D. Ohio March 1, 2010).

Young also claims MTC and MTC Medical LLC violated federal law by adopting an illegal policy or custom[1] which led to the deprivation of his constitutional rights. (*See* Doc. No. 29 at 7-9). This custom, Young claims, is that MTC conducts its annual tuberculosis test in the same way each year – in the common room with inmates waiting in line while other inmates speak with medical staff at various tables. (*Id.*). I have concluded the manner in which Defendants conducted the tuberculosis test did not violate Young's constitutional rights and therefore his policy-or-custom claim necessarily fails as well.

Next, Young claims Defendants have failed to disprove his allegations that they held a meeting in September 2016 in which Defendants agreed to conduct the tuberculosis testing in a manner likely to allow inmates to overhear the medical information of other inmates. (Doc. No. 29 at 7-8). Young misconstrues Defendants' burden under Rule 56. Defendants pointed to the lack of evidence of such a meeting, leaving Young with the burden to present evidence that this alleged meeting occurred. While Young is entitled to have "[a]ll evidence . . . viewed in the light most

---

[1] Young appears to abandon any policy-based claim, as he argues "Defendants were not following prison policy when they conducted the [tuberculosis] screening." (Doc. No. 29 at 11).

favorable to [him]", *White*, 533 F.3d at 390, he fails to show he is entitled to a presumption that such evidence exists when he offers no basis for the allegations in his complaint other than his suspicions.

Further, Young offers no evidence as to which of the Defendants "shared in the general conspiratorial objective to deprive" Young of his constitutional rights. *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . .") (citations omitted). Defendants are entitled to summary judgment on Young's civil conspiracy claim.

Finally, as Defendants note, an employer cannot be held liable for negligence under *respondeat superior* unless the plaintiff shows that an employee individually is liable for a tort against the plaintiff. *See, e.g., Colston v. Cleveland Pub. Library*, 522 F. App'x 332, 338 (6th Cir. 2013). Young has not made such a showing and therefore Defendants are entitled to summary judgment on his negligence claims.

## V. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, (Doc. No. 23), is granted. Young's motions to strike, (Doc. No. 28; Doc. No. 34; Doc. No. 41), are denied, and Defendant's motion to strike, (Doc. No. 44), is denied as moot. Young's motion for leave to file a declaration in support of his opposition to Defendants' summary judgment motion, (Doc. No. 38), is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge